# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

MINNESOTA LIFE INSURANCE COMPANY,  )
                                      )
            Plaintiff,              )
                                        )
v.                                  )     No.: 3:14-CV-443-TAV-CCS
                                        )
WILMINGTON TRUST COMPANY, as    )
Securities Intermediary; FUND HOUSE    )
FCP-SIF-INTERNATIONAL LIFE        )
SETTLEMENTS FUND; GENESIS         )
MERCHANT PARTNERS, LP;            )
SMARTBANK; and J. RANDALL HOOPER  )
AND RICHARD J. GETTELFINGER,    )
Co-Executors of the Estate of HERMAN  )
GETTELFINGER,                  )
                                        )
            Defendants.          )

## MEMORANDUM OPINION

This civil action is before the Court on cross-defendants Fund House FCP-SIF International Life Settlements Fund and Wilmington Trust Company's Motion to Dismiss [Doc. 28] and Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 [Doc. 35]. Cross-plaintiffs J. Randall Hooper and Richard J. Gettelfinger, Co-Executors of the Estate of Herman Gettelfinger, responded in opposition to each motion [Docs. 32, 38] and cross-defendants replied [Docs. 34, 39]. For the reasons set forth herein, the Court will grant cross-defendants' motion to dismiss for failure to state a claim upon which relief may be granted, and deny cross-defendants' motion for sanctions.

## I.    Background[1]

Minnesota Life Insurance Company ("Minnesota Life") filed a complaint in interpleader in this case against Wilmington Trust Company ("Wilmington Trust"); Fund House FCP-SIF-International Life Settlements Fund ("ILSF"); Genesis Merchant Partners, LP ("Genesis"); SmartBank; and J. Randall Hooper and Richard J. Gettelfinger ("cross-plaintiffs"), co-executors of the Estate of Herman Edward Gettelfinger ("the Estate") [Doc. 1].

Thereafter, the Estate filed an answer to Minnesota Life's complaint in interpleader, which raised certain affirmative defenses and included a cross-claim against Wilmington Trust, ILSF, and Genesis ("cross-complaint") [Doc. 16].   In their cross-complaint, cross-plaintiffs allege that sale of the policies to cross-defendants, individually or through a contract with Progressive Capital Solutions, LLC, was ineffective because the sale was unconscionable, lacked consideration, and was the result of constructive fraud [*Id.* ¶¶ 2–10].   They also allege that cross-defendants violated the Tennessee Consumer Protection Act, the Tennessee Viatical Settlement Act, the Tennessee Securities Act, and federal securities laws [*Id.* ¶¶ 11–27].

Cross-plaintiffs did not include their own factual statement in their cross-claim against cross-defendants, but rather incorporated their answers and affirmative defenses

---

[1] For the purposes of a motion to dismiss, the Court takes cross-plaintiffs' factual allegations as true.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that "when ruling on a defendant's motion to dismiss, a judge must accept as true all factual allegations contained in the complaint." (citations omitted)).

to Minnesota Life's complaint into each count [Doc. 16 ¶¶ 1, 2, 5, 8, 11, 15, 19, 23]. Looking to cross-plaintiffs' answer and affirmative defenses, the Court finds the pertinent facts to which cross-plaintiffs admitted to be as follows:

Cross-plaintiffs are the co-executors of the Estate, which is currently pending in Harrison County, Mississippi [Docs. 1 ¶ 6; 16 ¶ 6].

Minnesota Life had issued two Adjustable Life Summit Policies on the life of Nancy H. Gettelfinger ("Mrs. Gettelfinger"), which bear policy numbers 2-350-013N ("Policy 013N") and 2-348-015N ("Policy 015N") [Docs. 1 ¶ 11; 16 ¶ 11]. Each policy has a face amount of $1.5 million dollars, totaling $3 million dollars [*Id.*]. Herman Edward Gettelfinger ("Mr. Gettelfinger"), who was married to Mrs. Gettelfinger, was the initial owner and beneficiary of both policies [Docs. 1 ¶ 12; 16 ¶ 12].

Minnesota Life attached two documents to its complaint that it refers to as Exhibits A and B [Docs. 1-8; 1-9], which it describes as a letter from December 11, 2009, that it received from SmartBank that included "a 'Collateral Assignment of Life Insurance Policy' from Mr. Gettelfinger, as the assignor, to SmartBank, as the assignee" [Docs. 1 ¶ 13, 1-8, 1-9]. Cross-plaintiffs admit that "Exhibits A and B were attached to the [c]omplaint and state[ ] that those documents speak for themselves" [Doc. 16 ¶ 13]. Minnesota Life also attached other forms that allegedly effectuate a change to the ownership and beneficiary of both policies from Mr. Gettelfinger to "Wilmington Trust Company as Securities Intermediary" [Doc. 1 ¶ 14], but cross-plaintiffs only admit that

3

Minnesota Life "may have received certain documents attached to its Complaint" [Doc. 16 ¶ 14]. Moreover, cross-plaintiffs "den[y] that anyone other than [Mr.] Gettelfinger should have had ownership of Policy 013N and Policy 015N, or be listed as beneficiary of same" [*Id.* ¶¶ 17, 21, 22, 25].

After Mrs. Gettelfinger died, Minnesota Life "began having telephone conversations with Mr. Gettelfinger, or individuals acting on Mr. Gettelfinger's behalf, about the two Minnesota Life insurance policies naming Mrs. Gettelfinger as the insured." At that time, Mr. Gettelfinger or his representatives "questioned the assignment to SmartBank of $200,000.00 of Policy 015N and the sale of the policies to Progressive Capital and/or Wilmington Trust" [Docs. 1 ¶ 26; 16 ¶ 26].

Thereafter, Mr. Gettelfinger died [Docs. 1 ¶ 27; 16 ¶ 27]. Since his death, members of the Gettelfinger family or their representatives have continued to raise questions relating to the alleged assignment of the insurance policies, and to Mr. Gettelfinger's competency to enter into such transactions [Docs. 1 ¶ 28; 16 ¶ 28]. They also have discussed possible "undue influence issues with respect to the $200,000.00 SmartBank assignment" [*Id.*].

Throughout their answer to Minnesota Life's complaint, cross-plaintiffs assert that Mr. Gettelfinger is the true owner and beneficiary of the policies at issue, and that the Estate is entitled to all of the benefits from those policies [Doc. 16 ¶¶ 30, 31, 33, 34, 36, 37]. As part of their affirmative defenses, cross-plaintiffs state, among other things, that Mr. Gettelfinger was "subjected to undue influence by a third party with significant

4

financial and emotional influence," who "induced" him to enter into "certain contracts" [*Id.* ¶¶ 5, 6]. They also state that the "broker and purchaser in the viatical transactions clothed themselves with a mantle of legitimacy to facilitate an unconscionable transaction with [Mr.] Gettelfinger for which the brother received an unconscionably large 'commission'" [*Id.* ¶ 14].

## II.    Motion to Dismiss for Failure to State a Claim

ILSF and Wilmington Trust ("cross-defendants") have moved to dismiss cross-plaintiffs' cross-complaint [Doc. 28]. In their motion, cross-defendants allege that cross-plaintiffs fail to state a cause of action against cross-defendants as to each of their claims, their causes of action are time barred or barred by the doctrine of laches, and that ILSF is a bona fide purchaser of the policies at issue [*Id.*].

Cross-plaintiffs responded in opposition to cross-defendants' motion, alleging that they have pled sufficient factual content to satisfy the "plausibility" standard of Federal Rule of Civil Procedure 12(b)(6) [Doc. 32]. In the alternative, cross-plaintiffs state that cross-defendants' motion should be converted into a motion for summary judgment because it improperly relies on extrinsic evidence, and it should be denied so as to permit the parties to conduct further discovery [*Id.*]. They also allege that cross-defendants have not demonstrated why cross-plaintiffs' claims are time barred, or how ILSF is a bona fide purchaser [*Id.*]. Upon review of cross-plaintiffs' complaint, and answers and affirmative

defenses to the complaint, the Court agrees with cross-defendants and will dismiss cross-plaintiffs' claims.[2]

As the Court finds that cross-plaintiffs fail to state a claim for each of their claims against cross-defendants, the Court need not address whether the claims barred under the statute of limitations or the doctrine of laches, or whether ILSF is a bona fide purchaser.

## A. Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure sets forth a liberal pleading standard. *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004). It requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (quoting *Twombly*, 550 U.S. at 557)).

---

[2] In ruling on this motion, the Court considered only cross-plaintiffs' cross-complaint, answers to the complaint, and affirmative defenses [Doc. 16]. As a result, the Court will not convert cross-defendants' motion into a motion for summary judgment, or address cross-plaintiffs' request for additional discovery.

In deciding a Rule 12(b)(6) motion to dismiss, the Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In doing so, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

Rule 9(b) of the Federal Rules of Civil Procedure requires that allegations of fraud be stated with particularity. *Coffey v. Foamex L.P.*, 2 F.3d 157, 161 (6th Cir. 1993). The rule is meant to ensure that the complaint provides sufficient notice of the alleged misrepresentation, "allowing the defendants to 'answer, addressing in an informed way plaintiffs [sic] claim of fraud.'" *Id.* at 862 (alteration in original) (quoting *Brewer v. Monsanto Corp.*, 644 F. Supp. 1267, 1273 (M.D. Tenn. 1986)). Therefore, the rule requires "a plaintiff, at a minimum, to 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Id.* at 161–62 (quoting *Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1385 (W.D. Mich. 1992)). Additionally,

7

"allegations of fraudulent misrepresentation must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Id.* at 162 (internal quotation marks omitted) (quoting *Ballan*, 814 F. Supp. at 1385). The pleading requirements of Rule 9(b) should be read in harmony with those of Rule 8. *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988).

### B. Analysis

#### 1. Unconscionability

Cross-plaintiffs submit that the sale of the policies at issue to cross-defendants was "ineffective due to the transaction being unconscionable" [Doc. 16 p. 9]. A contract is unconscionable when the provisions "are so one-sided . . . that the contracting party is denied any opportunity for meaningful choice." *Reno v. SunTrust, Inc.*, No. E2006-01641-COA-R3CV, 2007 WL 907256, at *6 (Tenn. Ct. App. Mar. 26, 2007) (citation omitted). In such a contract, the inequality of the bargain "is so manifest as to shock the judgment of a person of common sense." *Id.* (citing *Huan v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984)). The contract may either be procedurally unconscionable, arising from one party's lack of reasonable choice, or substantively unconscionable, due to a contract having "unreasonably harsh" terms. *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 170–71 (Tenn. Ct. App. 2001) (citation omitted). Under Tennessee law, which tends to lump together procedural and substantive unconscionability, "the question of whether a given contract is unconscionable depends on 'all the facts and circumstances of a particular case.'" *Id.*; *Berent v. CMH Homes, Inc.*, 466 S.W.3d 740,

8

750 (Tenn. 2015) (citing *Owens v. Nat'l Health Corp.*, 263 S.W.3d 876, 889 (Tenn. 2007)).

Cross-plaintiffs state that Mr. Gettelfinger "was denied the opportunity for a meaningful choice during contract negotiations, and the contracts for the sale of the policies were so one-sided that they would shock the conscience of a reasonable person" [*Id.*]. Cross-defendants allege that cross-plaintiffs' claim should be dismissed because it does not put cross-defendants on notice as to the grounds upon which cross-plaintiffs' claim rests [Doc. 29 p. 6]. Specifically, cross-defendants state that cross-plaintiffs "do not allege any details about what is claimed to have been shocking to a reasonable person, who participated in that process, [ ] the 'choices' that were posed [, or even] the terms of the contract" [*Id.*].

Upon review of all of facts and circumstances alleged in the cross-complaint that pertain to the two policies at issue, the Court agrees with cross-defendants. Cross-plaintiffs' complaint does not explain why the sale of the two policies at issue was unconscionable. The cross-complaint does not explain how Mr. Gettelfinger was denied the opportunity for a meaningful choice, or why the policies were "so one-sided" to shock the conscience of a reasonable person. The cross-complaint does not identify any of the terms of the two policies, and does not explain any of the circumstances that surrounded the sale of the two policies.

The allegations in the cross-complaint do not allow the Court to determine whether the contract is procedurally unconscionable, as cross-plaintiffs have not explained any of the circumstances surrounding the sale of the two policies. Similarly, the allegations do not allow the Court to determine whether the contract is substantively unconscionable, as cross-plaintiffs have not alleged any of the terms of the policies. *See Gebhardt v. GMAC Mortgage, LLC*, No. 3:09-CV-425, 2010 WL 2901823, at *4 (E.D. Tenn. July 21, 2010) (finding that plaintiff was unable to explain why the loan agreement at issue was unconscionable because she did not detail what about it was "grossly unfair and "offensive," detail any of the contract's terms, or explain the circumstances surrounding its creation).

Cross-plaintiffs' claim that the sale of the two policies at issue was unconscionable does not give cross-defendants fair notice of what their claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555. Rather, it simply makes "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). Accordingly, cross-plaintiffs' claim that the sale of the two policies at issue was unconscionable is dismissed.

### 2. Lack of Adequate Consideration

Cross-plaintiffs claim that the sale of the policies at issue was ineffective due to a lack of adequate consideration [Doc. 16 p. 10]. As the Tennessee Supreme Court has stated, "there is a plain distinction . . . between mere inadequacy of consideration and a total or partial want of consideration." *Griffin v. Simmons*, 61 Tenn. 19, 21 (1872).

10

While every contract must be supported by consideration, "it is not essential that the consideration should be adequate in point of actual value." *Id.* Moreover, "[i]t is not necessary that the benefit conferred . . . shall be equal to the responsibility assumed. Any consideration, however small, will support a promise." *Danheiser v. Germania Sav. Bank & Trust Co.*, 194 S.W. 1094, 1096 (1917). So long as there is some consideration, courts "will not undertake to regulate the amount of the consideration." *Id.*

In their cross-complaint, cross-plaintiffs allege that Mr. Gettelfinger "received only a fraction of the true value of the insurance policies," making the sales of the policies ineffective due to a lack of consideration [Doc. 16 p. 10]. As part of their cross-complaint, cross-plaintiffs incorporated their answer to Minnesota Life Insurance Company's complaint and their affirmative defenses raised therein [*Id.*]. In paragraph 13 of Minnesota Life Insurance Company's complaint, Minnesota Life states that it "received from SmartBank a 'Collateral Assignment of Life Insurance Policy' from Mr. Gettelfinger, as the assignor, to SmartBank, as the assignee," and goes on to detail that those documents illustrate how the assignment was given in exchange for $200,000.00 [Doc. 1 ¶ 13]. In their answer to that complaint, cross-plaintiffs admit that "Exhibits A and B,"—a letter sent to Minnesota Life enclosing a document entitled "Collateral Assignment of Life Insurance Policy," attached to the complaint as Documents 1-8 and 1-9—were attached to Minnesota Life's complaint, and state that "those documents speak for themselves," but deny the remaining allegations contained in paragraph 13 [Doc. 16 p. 2].

11

In response to cross-defendants's motion—and despite cross-plaintiffs' earlier allegation that there was a lack of consideration—cross-plaintiffs state that for the sale of the policies at issue to be valid, there must be a "meeting of the minds," supported by "**sufficient consideration**, free from fraud or undue influence, not against public policy[,] and sufficiently definite to be enforced" [Doc. 32 p. 6 (emphasis in original) (citing *ICG Link, Inc. v. Steen*, 363 S.W.3d 533, 543 (Tenn. Ct. App. 2011))]. Cross-plaintiffs appear to allege that the assignment of the policies at issue did not contain sufficient consideration, rather than a lack of consideration.

In considering cross-plaintiffs' allegations, the Court finds that cross-plaintiffs' claim fails for two reasons: (1) cross-plaintiffs have acknowledged that there was some consideration given in exchange for assignment of the policies; and (2) cross-plaintiffs' complaint does not contain sufficient factual detail to put cross-defendants on notice of cross-plaintiff's claim.

First, cross-plaintiffs are correct that contracts require a meeting of the minds, consideration, a lack of fraud or undue influence, and that they must be sufficiently definite and not against public policy. *ICG Link, Inc.*, 363 S.W.3d at 543. While cross-plaintiffs allege that the policies have a "lack of consideration," they also acknowledge in their complaint that Mr. Gettelfinger "received . . . a fraction of the true value of the

12

insurance policies" [Doc. 16 p. 10].[3]  This implies that Mr. Gettelfinger did receive some

value in exchange for his alleged sale of the insurance policies at issue.

To the extent cross-plaintiffs allege that there was not sufficient consideration, the

Tennessee Supreme Court was clear that "sufficient" consideration need not be "adequate

in point of actual value."  *Griffin*, 61 Tenn. at 21; *see also Holt v. Wilmoth*, 336 S.W.3d

234, 240 (Tenn. Ct. App. 2010) (distinguishing between a "complete lack of

consideration" from merely "inadequate consideration").  Cross-plaintiffs' allegation,

therefore, is more akin to one regarding the adequacy of the consideration that Mr.

Gettelfinger received in exchange for the insurance policies, rather than one regarding a

complete lack of consideration.  The Court, however, will not inquire into the

adequateness of that consideration.  *Danheiser*, 194 S.W. at 1096 (stating that "courts

will not undertake to regulate the amount of the consideration").  Thus, taking cross-

plaintiffs' allegations in the cross-complaint as true and drawing all reasonable inferences

in cross-plaintiffs' favor, the Court finds that cross-plaintiffs cannot make out a cause of

action for a lack of consideration.

Second, the Court finds that cross-plaintiffs claim for lack of consideration is

devoid of any factual support that could provide the Court and cross-defendants with

what amount of consideration was actually given in exchange for the insurance policies.

---

[3] In its response to cross-defendants's motion to dismiss, cross-plaintiffs agree with
cross-defendants that *Holt v. Wilmoth*, 336 S.W.3d 234 (Tenn. Ct. App. 2010), provides that "a
small amount of consideration could be a potential defense" to a claim for lack of consideration,
but that such a defense is not tenable when the cause of action is for lack of consideration [Doc.
32 p. 5].

13

Cross-plaintiffs have simply asserted that Mr. Gettelfinger received "a fraction" of the value of the insurance policies, and that Documents 1-8 and 1-9 "speak for themselves" [Doc. 16 p. 2]. The Court finds that cross-plaintiffs' claim fails because it does not put cross-defendant on notice as to what cross-plaintiffs' claim is and the grounds upon which it rests. Cross-plaintiffs do not detail how there was a lack of consideration [Doc. 16 p. 10], or sufficient consideration [Doc. 32 p. 6]. Accordingly, cross-plaintiffs' claim that the sale of the two policies at issue was unconscionable is dismissed.

### 3. Constructive Fraud

Cross-plaintiffs next claim that the sale of the policies at issue was ineffective due to constructive fraud [Doc. 16 p. 10]. "Constructive fraud is a breach of a legal or equitable duty which is deemed fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 39 (Tenn. Ct. App. 2006) (citing *Cornwell v. Hodge*, C.A. No. 44, 1986 WL 5890, at *3 (Tenn. Ct. App. May 23, 1986)). It is "essentially fraud without the element of intent." *Id.* at 39–40.

In cross-plaintiffs' complaint, they submit that "there was a legal and/or equitable duty" owed to Mr. Gettelfinger in this sale, "these duties were breached," "the sale was deceptive," and "deceptive sales of insurance policies are against public interests" [Doc. 16 p. 10]. In response to cross-defendants' motion, cross-plaintiffs further detailed that there was "a clear duty in the relationship between [Mr.] Gettelfinger and the broker and all purchasers involved in the sale of the life insurance policies. The parties involved had

14

knowledge of the medical and financial conditions of both Mr. and Mrs. Gettelfinger, and took advantage of same" [Doc. 32 p. 7].

Looking to the cross-complaint, the Court finds it does not provide cross-defendants with sufficient notice of what the alleged misrepresentation was. *Coffey*, 2 F.3d at 161. Cross-plaintiffs have not alleged the time, place, or content of the alleged misrepresentation. *Id.* They have not stated who specifically owed Mr. Gettelfinger a duty, or what was deceptive about that person's interactions with Mr. Gettelfinger.

Even if the Court were to look to cross-plaintiffs' response to the motion to dismiss, cross-plaintiffs simply allege that "the broker and all purchasers involved" owed Mr. Gettelfinger a "clear duty," but does not name or specify who those brokers were, or what acts or omissions those brokers did that were deceptive. *See id.* (finding that plaintiff could not make out a claim for fraudulent misrepresentation when plaintiff alleged that defendants, "through their agents," were guilty, without naming or specifying who those agents were; and while being "vague at best as to which specific acts or omissions of the defendants amounted to fraudulent misrepresentation"). Finally, cross-plaintiffs' complaint does not allege any details regarding Mr. Gettelfinger's reliance on cross-defendants's alleged deceptive act or omission. *Id.* at 162.

In sum, the Court finds that cross-plaintiffs' constructive fraud claim has not been alleged with particularity, in violation of Rule 9(b) of the Federal Rules of Civil Procedure. Accordingly, this claim is dismissed.

### 4.     Violation of Tennessee Consumer Protection Act

Cross-plaintiffs allege that cross-defendants violated the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101, *et seq.*  "In order to recover under the TCPA, the plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated . . . ." *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (quoting Tenn. Code Ann. § 47–18–109(a)(3)).

Cross-plaintiffs allege in the complaint that the sale of the policies to cross-defendants violated the Tennessee Consumer Protection Act, and "rendered the sale of the policies ineffective, by unfairly and deceptively inducing [Mr.] Gettelfinger to sell his policies at an unfair price," thereby causing cross-plaintiffs to suffer damages and incur expenses [Doc. 16 p. 11].  Cross-plaintiffs do not, however, specify what provision of the TCPA they believe cross-defendants violated through their deception.  Nor does the complaint provide sufficient detail to put cross-defendants on notice of what was the deceptive act that induced Mr. Gettelfinger to sell his insurance policies.  Cross-plaintiffs' complaint merely contains a "formulaic recitation of the elements" of a TCPA violation, and is entirely "devoid" of factual enhancement.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Accordingly, cross-plaintiffs' claim under the TCPA is dismissed.

16

### 5.    Violation of the Tennessee Viatical Settlement Act

Cross-plaintiffs allege that cross-defendants violated the Tennessee Viatical Settlement Act ("TVSA"), Tenn. Code. Ann. § 56-50-101, *et seq.*[4]   Under the TVSA, upon a violation, "the viatical settlement purchase agreement [is] voidable and subject to rescission by the viatical settlement purchaser."   Tenn. Code Ann. § 56-50-115.   A "viatical settlement purchaser" is "a person who provides a sum of money as consideration for a life insurance policy or an interest in the death benefits of a life insurance policy."   Tenn. Code Ann. § 56-50-102.

Cross-plaintiffs submit that the sale of the policies at issue violated the TVSA, and "rendered the sale of the policies ineffective, by proceeding with a viatical transaction with [Mr.] Gettelfinger despite being unlicensed" in Tennessee, causing cross-plaintiffs to suffer damages and incur expenses as a result [Doc. 16 p. 11].   The complaint, however, does not allege how the sale of the policies at issue qualifies as a viatical transaction, how Mr. Gettlefinger could be described as a viatical settlement purchaser— the party who has the ability to void the contract under the TVSA—or who was required to be licensed.   The Court thus finds that cross-plaintiffs' claim to be devoid of factual enhancement as it does not provide cross-defendants with notice as to the alleged TVSA violation, and should be dismissed.

---

[4] In an unrelated case, the Tennessee Supreme Court has stated that a former examiner at the Securities Division of the Tennessee Department of Commerce and Insurance described viatical settlements as contracts where "third-party investors purchase either an entire life insurance policy or stake in a life insurance policy that has been sold by the policyholder prior to his or her death; when the original policyholder dies, the investor, as the legal beneficiary, receives the death benefit from the policy."  *State v. Casper*, 297 S.W.3d 676, 694 (Tenn. 2009).

###### 6.  Violation of the Tennessee Securities Act and Federal Securities Laws

Cross-plaintiffs allege that the sale of the policies at issue to cross-defendants violated the Tennessee Securities Act and federal securities laws, thereby rendering the sale of the policies ineffective, "by transacting business involving a security with [Mr.] Gettelfinger despite not being registered" in either Tennessee or under federal securities laws, causing them to suffer damages and incur expenses as a result [Doc. 16 pp. 12–13].

The complaint fails to specify which provision of the Tennessee Securities Act or the federal securities laws defendants purportedly violated, who was required to be registered in Tennessee or under the federal laws, and under which civil cause of action in the Act or under federal securities laws cross-plaintiffs are proceeding.

While cross-plaintiffs allege that the allegations contained in the cross-complaint provide cross-defendants with fair notice, particularly when read in conjunction with their answer to plaintiff's complaint [Doc. 16], the Court does not agree.  In their answer to plaintiff's complaint, the majority of the substantive facts to which the cross-plaintiffs admit include that Mr. Gettelfinger "was and remained the owner and beneficiary of the policies," [Doc. 16 ¶ 30] and that the Gettelfinger family and its representatives have "continued to raise questions about the assignment to SmartBank of $200,000.00 of Policy 015N and the sale of both policies to Progressive Capital and/or Wilmington Trust" [Doc. 1 ¶ 28].  Cross-plaintiffs also admit that the Gettelfinger family has "raised possible competency issues relating to Mr. Getterlfinger's ability to enter into

transactions with SmartBank, Wilmington Trust, and Progressive Capital[,] and undue influence issues with respect to the $200,000 SmartBank assignment" [*Id.*].

When reviewing cross-plaintiffs' complaint in conjunction with these answers to plaintiff's complaint, the Court finds that cross-plaintiffs have not alleged sufficient facts to put cross-defendants on notice as to what statute under the Tennessee Securities Act or federal securities laws cross-defendant actually violated, in what transaction, and who was required to be registered. Furthermore, cross-plaintiffs do not submit how the alleged act is subject to federal securities laws. The Court finds that the cross-complaint and answer—which simply contain "naked assertions" that lack further factual enhancement—cannot state plausible claims to relief. *Ashcroft*, 556 U.S. at 678. Accordingly, cross-plaintiffs' claims under the Tennessee Securities Act and federal securities laws are dismissed.

## III.  Motion for Sanctions

Cross-defendants also move the Court for sanctions against cross-plaintiffs, pursuant to Federal Rule of Civil Procedure 11 [Doc. 35]. Cross-defendants submit that cross-plaintiffs have admitted that they have not complied with the requirements of Federal Rule of Civil Procedure 11(b)(3) because they did not conduct a reasonable inquiry into their claims prior to filing the cross-complaint [Doc. 36 p. 4]. In this motion, cross-defendants request the Court to enter an order striking cross-plaintiffs' answer, affirmative defenses, and counterclaim [Doc.16], and requiring cross-plaintiffs bear the

cross-defendants' costs, including attorneys' fees, that they have incurred in defending this action [Doc. 35].

In support, cross-defendants note that in the Affidavit of Richard J. Gettelfinger [Doc. 32-1], which was filed along with cross-plaintiffs' opposition to cross-defendants' motion to dismiss, Richard Gettelfinger states: "The Gettelfinger Estate is unable to show all facts necessary to the relevant defenses and claims unless discovery is conducted, nor can the Gettelfinger Estate adequately investigate the 'facts' and documents presented until discovery is complete" [Doc. 36 p. 2 (citing Doc. 32-1 ¶ 5)]. They allege that this demonstrates that cross-plaintiffs' counsel did not conduct a reasonable inquiry into its claims prior to filing the cross-complaint, in violation of Rule 11 [*Id.*]. Cross-defendants also allege that cross-plaintiffs brought their claims for an improper purpose [*Id.* p. 7].

Cross-plaintiffs responded in opposition to cross-defendants' motion, noting that they filed the cross-complaint only after conducting "an objectively reasonable inquiry into the facts known at the time of filing" [Doc. 38]. Thereafter, cross-defendants replied [Doc. 39].

Rule 11(b)(3) of the Federal Rules of Civil Procedure provides:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b)(3). This rule "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and not interposed for any improper purpose." *McGhee v. Sanilac Cty.*, 934 F.2d 89, 92–93 (6th Cir. 1991) (citing *Cooter & Gell v. Hartmarx Corp.*, 110 S. Ct. 2447, 2454 (1990)). The rule "imposes upon litigants a continuing obligation to refrain from pursuing meritless or frivolous claims during the course of proceedings." *Dearborn St. Bldg. Assocs., LLC v. Huntington Nat. Bank*, 411 F. App'x 847, 850 (6th Cir. 2011). The Supreme Court has described that Rule 11(b)(3) provides "flexibility" by "allowing pleadings based on evidence reasonably anticipated after further investigation or discovery." *Rotella v. Wood*, 528 U.S. 549 (2000).

Rule 11(c) provides that if, after notice and an opportunity to respond, the Court determines that 11(b) has been violated, it may impose an appropriate sanction on any attorney, law firm, or party who violated the rule. Fed. R. Civ. P. 11(c). "[I]n this circuit, the test for the imposition of Rule 11 sanctions is whether the individual attorney's conduct was reasonable under the circumstances." *McGhee v. Sanilac Cty.*, 934 F.2d at 92–93 (citing *Mann v. G & G Mfg., Inc.*, 900 F.2d 953,958 (6th Cir. 1990)).

In this case, the Court concludes that cross-defendants have not shown that cross-plaintiffs' actions were frivolous, done for improper purpose, without evidentiary support, or otherwise unreasonable so as to warrant relief under Rule 11. While cross-defendants allege that cross-plaintiffs did not conduct a reasonable inquiry into their claims prior to filing the cross-complaint, the Court notes that cross-plaintiffs have

alleged that they began questioning the assignment of the policies after Mrs. Gettelfinger died, and they continued to do so after Mr. Gettelfinger's death [Docs. 1 ¶ 26, 28; 16 ¶ 26, 28].  The claims included in the cross-complaint relate to cross-plaintiffs' beliefs regarding the invalidity of those assignments.

While cross-plaintiffs admit they are unable at the present time to show "all facts necessary" to their claim, the Court notes that cross-plaintiffs are only required to conduct a reasonable inquiry into their pleadings.  The Court may allow cross-plaintiffs' pleadings so long as the cross-plaintiffs reasonably anticipate obtaining additional discoverable evidence that would pertain to their claims.  The Court finds that cross-plaintiffs have met this burden.  While the Court finds that cross-plaintiffs fail to state a claim under Rule 12(b)(6), the Court does not find that cross-plaintiffs' claims are frivolous, dilatory, unreasonable, or were claimed without reasonable inquiry, so as to warrant relief under Rule 11.  Accordingly, cross-defendants' motion [Doc. 35] is denied.

## IV.    Conclusion

For these reasons, cross-defendants' motion to dismiss [Doc. 28] is **GRANTED**. The Court **DISMISSES** cross-plaintiffs' claims against cross-defendants.   Cross-defendants' motion for sanctions [Doc. 35] is **DENIED**.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE